Karon D. TROTTER, Jr. *v.* STATE of Arkansas

CA CR 06-863                                     256 S.W.3d 528

Court of Appeals of Arkansas
Opinion delivered May 9, 2007

*John F. Gibson, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

DAVID M. GLOVER, Judge. Appellant, Karon Trotter, Jr., was tried by a jury and found guilty of the offenses of possession of drug paraphernalia, manufacturing cocaine, possession of cocaine with intent to deliver, and delivery of cocaine. He was sentenced to three years on the drug-paraphernalia conviction and twenty years on each of the remaining convictions. The sentences were ordered to run concurrently. For his sole point of appeal, appellant contends that the trial court erred in denying his motion to suppress evidence. We affirm.

There is no real factual dispute in this case, and the pertinent facts can be summarized as follows. Monticello police officers made arrangements with a confidential informant, Buddy Frost, to make a controlled cocaine buy from appellant within the city limits of Monticello on March 11, 2005. Appellant was staying at the Economy Inn in Monticello. Frost initially tried to contact appellant by using a pay phone located at a store in Monticello. Appellant did not answer the call from that location. According to Frost, appellant would only answer calls from two numbers, one of which was Frost's home telephone. Consequently, the initial plan had to be changed to allow Frost to make the call from his home phone, which was located north of Monticello — outside the city limits.

Appellant was subsequently observed driving toward Frost's house, and Frost then later called Tommy Free, the Monticello Chief of Police, to report that appellant had been there and that the controlled buy had been completed. Chief Free positioned his vehicle along a public road to watch for appellant's return from Frost's house but was not able to see the car. Frost delivered the purchased cocaine to Chief Free and then returned home, soon thereafter reporting to Chief Free that appellant had returned to Frost's home with more cocaine for another sale.

Chief Free alerted other Monticello officers to look out for appellant's vehicle along the road from Frost's house. An officer named Deaton notified Chief Free that he had observed appellant's car on its way from Frost's house. Deaton followed appellant's vehicle, and Chief Free fell in behind Deaton's vehicle when appellant and Deaton passed him. Chief Free explained that the officers had planned to follow appellant into Monticello; however, appellant's vehicle pulled over to the side of the road before reaching Monticello city limits. The officers surmised that appellant had realized he was being followed, and they thought that he might try to dispose of the evidence. Deaton's vehicle went around appellant's car, but Chief Free turned on his lights and pulled in front of appellant's car. As the officers approached the vehicle, it accelerated toward one of the officers and then ran into a ditch. Cocaine, the buy money, a motel-room key, and drug paraphernalia were retrieved by the officers. In addition, bank records and motel-room receipts were retrieved from appellant's briefcase.

Mark Gober testified that he was the sheriff of Drew County, Arkansas. He explained that he issued commissions to various members of the Monticello Police Department for purposes of working in the county. The cards evidencing the commissions provided in pertinent part that the sheriff had appointed the named officers "as a Deputy Sheriff" and that the sheriff "hereby authorize[s] the said Deputy to perform all the duties prescribed by law to my said office." In addition, Sheriff Gober produced an accompanying letter of January 27, 2005, listing the officers to whom he had issued commission cards, which letter also provided in pertinent part:

> As formally stipulated the usage of these cards will be closely monitored.
>
> Utilization of the cards is to be one of the following:
>
> 1. The Sheriff or Chief Deputy request assistance.
>
> 2. At any time the Monticello Police Department has need to be outside the city limits, the Sheriff shall be notified and in his absence the chief deputy shall be notified. At which time the appropriate personnel will be dispatched to assist. Any misuse of the card will be quickly handled and the appropriate action taken.
>
> In the future as I get to know other Police Department personnel additional cards may be issued. Both of our Departments believe in

a good working relationship towards improving the lives of our citizens by providing good law enforcement for our county.

Sheriff Gober explained that he was not advised of the investigation prior to appellant's arrest; that he first learned city officers had made a stop in the county from one of his own deputies; that he found out about the entire matter after March 11; that he "absolutely" would have approved the operation if he had known; and that the operation was scheduled to take place in the city, but appellant's own actions made it necessary to go into the county and to make the arrest in the county. He stated that he believed the Monticello officers were acting under the authority that he had provided them; that their actions began in the city limits and he would expect them "to stay on it" until finished; and that he believed it was a necessity for the city officers to go into the county. He concluded that he did not believe that the city officers had violated the agreement or misused their commission cards.

### Standard of Review

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling denying the motion to suppress is clearly against the preponderance of the evidence. *Sheridan v. State*, 368 Ark. 510, 247 S.W.3d 481 (2007).

### Jurisdictional Authority to Arrest

Appellant contends that all of the evidence obtained in his case was the result of an illegal stop/search of his vehicle and that the trial court therefore erred in denying his motion to suppress. The only basis asserted by appellant in this appeal for his claim that the search was illegal is that the Monticello police officers were operating outside of the city limits, and "beyond the limits of their appointments as deputy sheriffs of Drew County when they made the warrantless stop of his vehicle." Appellant acknowledges that the officers carried commission cards, which purportedly appointed them to act as deputy sheriffs in Drew County. He contends, however, that Sheriff Gober's letter of January 27, 2005, placed limits on the appointments and that the officers involved in the stop and search of his vehicle were not acting within those designated limitations on their authority. He argues, therefore, that all evidence and everything else resulting from the stop should have been suppressed under the fruit-of-the-poisonous-tree doctrine. We disagree.

Arkansas Code Annotated section 14-15-503 (Repl. 1998), provides in pertinent part:

> (a) Every deputy sheriff appointed as provided by law shall possess *all* the powers of his principal and may perform *any* of the duties required by law to be performed by the sheriff.

(Emphasis added.) Appellant does not challenge the appointments themselves. Moreover, the statute clearly grants full powers to appointed deputy sheriffs. The officers involved in the stop were all listed as recipients of commission cards in Sheriff Gober's letter of January 27, 2005. The trial court concluded that the evidence established that the arresting Monticello police officers were all commissioned deputies in Drew County, that appellant had cited him no law pertaining to the placement of conditions on commissions, and that Sheriff Gober was satisfied that the officers had acted within their authority as deputies. The trial court, therefore, denied the motion to suppress.

     In addition, upon examining the contents of Gober's January 27 letter, it can be fairly said to provide that use of the cards was to take place in two basic situations: 1) when the sheriff or chief deputy requested assistance, and 2) any time the Monticello Police Department needed to be outside the city limits. In the latter situation, the letter also provides that the Sheriff or Chief Deputy shall be notified, at which time appropriate personnel will be dispatched to assist. Even though the letter uses the term "shall" it does not specify that notification must precede any action. Sheriff Gober testified that he had no problem with the series of events leading to appellant's arrest, and that he "absolutely" would have approved the operation. The trial court determined that the officers acted within their authority as appointed deputy sheriffs. Appellant's argument does not convince us otherwise. Our de novo review of this record reveals no clear error in the trial court's denial of appellant's motion to suppress.

Affirmed.

BAKER and MILLER, JJ., agree.